**F I L E D**
CLERK, U.S. DISTRICT COURT

3/8/2024

CENTRAL DISTRICT OF CALIFORNIA
BY:            TV            DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2024 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>                   v.<br><br>JIAN XIN,<br><br>              Defendant. | CR No. 2:24-cr-00157 -MWF<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy to<br>Defraud the United States; 18<br>U.S.C. § 501: Use of and<br>Possession with Intent to Use<br>Counterfeit and Fraudulent Postage<br>Meter Stamps; 18 U.S.C. § 492,<br>18 U.S.C. § 981(a)(1)(C), and 28<br>U.S.C. § 2461(c): Criminal<br>Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

A.    INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

The United States Postal Service and Postage Systems

1.    The United States Postal Service ("USPS"), an agency of the United States, provided customers a variety of services in connection with the delivery of mail, including letters and parcels.  All pieces of mail accepted for delivery by USPS were required to bear

appropriate and valid postage purchased by the sender.  Proof of payment of the required postage could be established in various ways including by affixing stamps, postage meter imprints, PC postage products and shipping labels purchased online and printed by the customer.

2.   Postage evidencing systems were devices that allowed USPS customers to obtain and affix postage meter stamps to mail pieces being presented to the USPS for delivery.  One form of postage evidencing system that USPS customers could use was PC Postage software.  PC Postage was a USPS-approved third-party vendor software that mailers could use to pay for and print their postage.

3.   Postage labels printed from postage evidencing systems included two types of information relevant to the amount of postage: (1) human-readable postage information detailing the type of postage product (e.g., First Class Mail), the date the postage was purchased, the originating zip code, the weight of the package, and the shipping distance; and (2) information-based indicia ("IBI"), which were digital indicia that include coded information and a USPS approved symbol with a digital signature.  Among other things, the IBI embedded in the coded section of a postage label showed whether the mailer had paid the appropriate amount of postage for the item to be mailed, given the item's designated class of mail.

Defendant JIAN XIN

4.   Defendant JIAN XIN owned and operated a consumer goods business named Whizzotech Corporation ("Whizzotech"), which was registered in California.

5.   Defendant XIN operated Whizzotech through at least one warehouse located in La Puente, California.  Defendant XIN would

1  obtain consumer goods and package them for shipment at the Whizzotech
2  warehouse.  Whizzotech employees would affix PC Postage shipping
3  labels to these packages and deliver the packages to USPS facilities
4  to be shipped to Whizzotech customers throughout the United States.

5  B.   THE OBJECT OF THE CONSPIRACY

6       6.   Beginning no later than in or about June 2021, and
7  continuing until at least in or about March 2024, in Los Angeles
8  County, within the Central District of California, and elsewhere,
9  defendant XIN knowingly conspired and agreed with others known and
10 unknown to the Grand Jury to defraud the United States by impeding,
11 impairing, obstructing, and defeating the lawful government functions
12 of the United States Postal Service in the ascertainment and
13 collection of postal revenues, namely, postage fees on packages
14 shipped by defendant XIN within the United States.

15 C.   THE MANNER AND MEANS OF THE CONSPIRACY

16      7.   The object of the conspiracy was to be carried out, and was
17 carried out, in substance, as follows:

18           a.   To evade the required payment of the cost of postage
19 and deceive USPS personnel, defendant XIN would affix, and cause to
20 be affixed, counterfeit PC Postage to mail matter he or his employees
21 presented to USPS for delivery.  The counterfeit PC Postage used by
22 defendant XIN took two forms: (1) postage labels with altered human-
23 readable information ("altered postage labels"); and (2) postage
24 labels with IBI copied from previously mailed packages ("duplicated
25 postage labels").

26           b.   Defendant XIN would purchase altered PC Postage
27 shipping labels from individuals in China that used false third-party

28

3

1  postage vendor and mailer ID information, thereby falsely

2  representing that he had paid for the postage.

3          c.   Defendant XIN would also cause the duplicated postage

4  labels to contain IBI copied from PC Postage shipping labels

5  purchased for previous mailings, thereby avoiding the need to pay for

6  the postage shown on the duplicated label.  Defendant XIN would

7  transpose and cause to be transposed the copied IBI onto fabricated

8  shipping labels designed to mimic the PC Postage shipping labels of

9  third-party postage vendors.

10          d.   After being confronted by law enforcement and signing

11  a form agreeing to stop using counterfeit postage, defendant XIN or a

12  co-conspirator would open a new P.O. box in defendant XIN's spouse's

13  name.  Defendant XIN would then use the new P.O. box as the return

14  address for packages that he continued to ship using the counterfeit

15  and fraudulent PC postage.

16  D.   OVERT ACTS

17          8.   On or about the following dates, in furtherance of the

18  conspiracy, and to accomplish its object, defendant XIN, together

19  with others known and unknown to the Grand Jury, committed and

20  willfully caused others to commit the following overt acts, among

21  others, within the Central District of California and elsewhere:

22          Overt Act No. 1:   On June 1, 2021, defendant XIN caused to be

23  shipped into the mail stream multiple parcels bearing counterfeit

24  USPS postage meter stamps.  The counterfeit PC Postage labels affixed

25  to these packages included both altered postage labels and duplicated

26  postage labels.

27          Overt Act No. 2:   On August 18, 2023, defendant XIN caused to

28  be transported to the USPS Post Office in Walnut, California,

1   approximately 2,500 parcels.  This delivery included multiple
2   packages bearing counterfeit USPS PC postage meter stamps.  The
3   counterfeit USPS PC postage affixed to these packages included both
4   altered postage labels and duplicated postage labels.

5      Overt Act No. 3:   On November 15, 2023, defendant XIN opened
6   P.O. Box 3029 in Covina, California.

7      Overt Act No. 4:   In late November 2023, defendant XIN sent a
8   co-conspirator information to be printed on altered and fraudulent
9   postage, paid the co-conspirator for the altered and fraudulent
10  postage in Chinese Yuan, and told the co-conspirator to delete the
11  underlying information after the co-conspirator had downloaded it.

12     Overt Act No. 5:   On December 5, 2023, at a Whizzotech
13  warehouse facility located at 204 S. 5th Ave., La Puente, California
14  91746, defendant XIN caused to be printed multiple counterfeit USPS
15  PC postage stamps, including USPS Ground Advantage Mail labels, and
16  possessed with the intent to use such forged and counterfeited
17  postage meter stamps.  Some of these labels bore the return address
18  of defendant XIN's P.O. Box 3029 in Covina, California.

19     Overt Act No. 6:   On December 12, 2023, defendant XIN or a co-
20  conspirator opened P.O. Box 2939 in Covina, California in defendant
21  XIN's spouse's name.

22     Overt Act No. 7:   On December 19, 2023, defendant XIN caused
23  to be transported to the USPS Post Office in Covina, California at
24  least 50 parcels bearing counterfeit USPS PC Priority Mail and USPS
25  PC Ground Advantage Mail labels.  The counterfeit PC Postage labels
26  affixed to these packages included both altered postage labels and
27  duplicated postage labels.  Some of the parcels bore the return
28  address of the newly opened P.O. Box 2939 in Covina, California.

                              COUNT TWO

                        [18 U.S.C. §§ 501, 2(b)]

     9.   The Grand Jury re-alleges paragraphs 1 through 5 of this Indictment here.

     10.  Beginning no later than in or about June 2021, and continuing to on or about March 8, 2024, in Los Angeles County, within the Central District of California, and elsewhere, defendant JIAN XIN knowingly and willfully caused to be forged and counterfeited USPS PC postage meter stamps and knowingly used such forged and counterfeited postage meter stamps.

COUNT THREE

[18 U.S.C. §§ 501, 2(b)]

11.  The Grand Jury re-alleges paragraphs 1 through 5 of this Indictment here.

12.  On or about December 19, 2023, in Los Angeles County, within the Central District of California, defendant JIAN XIN knowingly and willfully caused to be forged and counterfeited USPS PC Priority Mail and USPS PC Ground Advantage Mail postage meter stamps, and knowingly possessed with intent to use such forged and counterfeited postage meter stamps, on at least 50 parcels addressed to various recipients throughout the United States.

FORFEITURE ALLEGATION

[18 U.S.C. §§ 492 and 981(a)(1)(C), and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 492 and 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of Counts One through Three set forth in this Indictment.

2.    The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)  All right, title and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any such offense;

(b)  All right, title, and interest in any and all counterfeits, articles, devices, and other things made, possessed, or used in any such offense, or any material or apparatus used or fitted or intended to be used in the making of such counterfeits, articles, devices, or things; and

(c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence;

1  (b) has been transferred, sold to or deposited with a third party;

2  (c) has been placed beyond the jurisdiction of the court; (d) has

3  been substantially diminished in value; or (e) has been commingled

4  with other property that cannot be divided without difficulty.

5

6

7                                   A TRUE BILL

8

9                              ___/s/_____
                               Foreperson

10

11  E. MARTIN ESTRADA
    United States Attorney
12
    MACK E. JENKINS
13  Assistant United States Attorney
    Chief, Criminal Division
14

15

16

17  SCOTT M. GARRINGER
    Assistant United States Attorney
18  Deputy Chief, Criminal Division

19  BENEDETTO L. BALDING
    Assistant United States Attorney
20  Deputy Chief, General Crimes Section

21  K. AFIA BONDERO
    Assistant United States Attorney
22  General Crimes Section

23

24

25

26

27

28

                                    9